**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | | |
|---|---|---|
| **S.R, a minor, by and through his next friend and mother, T.R.,** | : | Case No. |
| | : | |
| **and** | : | Judge: _____ |
| | : | |
| **L.G., a minor, by and through her next friend and mother, L.J.,** | : | **COMPLAINT FOR DAMAGES AND** |
| | : | **DECLARATORY AND INJUNCTIVE** |
| | : | **RELIEF AND JURY DEMAND** |
| **PLAINTIFFS,[1]** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KENTON COUNTY SHERIFF'S OFFICE,** a public entity, 303 Court Street Suite 409 Covington, Kentucky 41011 | : | |
| | : | |
| | : | |
| **CHARLES KORZENBORN,** in his official capacity as Sheriff of Kenton County, 303 Court Street Suite 409 Covington, Kentucky 41011 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| and **KEVIN SUMNER,** School Resource Officer, in his individual and official capacities, 303 Court Street Suite 409 Covington, Kentucky 41011 | : | |
| | : | |
| | : | |
| | : | |
| **DEFENDANTS.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

---

[1] Plaintiffs S.R. and L.G. are minor children.  They are referred to by their initials in accordance with Federal Rule of Civil Procedure 5.2(a)(3).  A Motion to Proceed Using Initials for the mothers of T.R. and L.J. has been filed with this Complaint.  Accordingly, Plaintiffs are identified by their initials throughout this Complaint.

**INTRODUCTION**

1.      This is an action for damages and for declaratory and injunctive relief to remedy Defendants' violations of Plaintiffs' rights under the U.S. Constitution and the Americans with Disabilities Act.

2.      Plaintiffs S.R. and L.G. are two elementary schoolchildren with disabilities, an eight-year old boy and a nine-year-old girl, who were unlawfully restrained and handcuffed at school with excessive force and without necessity by Defendant Kevin Sumner (Sumner), the School Resource Officer assigned to Plaintiffs' schools.  Plaintiff S.R. was handcuffed on one occasion; Plaintiff L.G. was handcuffed on two occasions.  The three incidents occurred in the Fall of 2014.

3.      Because of the children's small size in comparison to the handcuffs, which are designed for adults, Defendant Sumner handcuffed them behind their backs, and placed the handcuffs on their biceps (above the elbows).  This use and placement of handcuffs on small children is contrary to guidance on the safe use of handcuffs.

4.      Defendant Sumner acknowledges handcuffing Plaintiffs S.R. and L.G.  Portions of one of the three handcuffing incidents is captured on video.  (*See* Exhibits A and B).  On no occasion was there an imminent danger of physical harm to the child or to anyone else that required Defendant Sumner to handcuff the child behind the back above the elbow.

5.      As a result of being subjected to unnecessary and excessive handcuffing, Plaintiffs experienced pain, fear, and emotional trauma, and an exacerbation of their disabilities.

6.      Defendants Kenton County Sheriff's Office (KCSO) and Charles Korzenborn (Korzenborn) are charged with the responsibility of establishing policies, practices, and training for School Resource Officers such as Defendant Sumner.  Despite the provisions of federal and

state law, Defendants KCSO and Korzenborn are aware that mechanical restraints have been used against elementary-aged schoolchildren, including schoolchildren with disabilities, by School Resource Officers under their supervision. Defendants KCSO and Korzenborn have permitted and, upon information and belief authorized, School Resource Officers, including Defendant Sumner, to use mechanical restraints in such a way as to constitute excessive force in restraining elementary schoolchildren with disabilities, including the unlawful use of handcuffs with excessive force and without necessity.

7. In 2009, the U.S. Government Accountability Office (GAO) published a nationwide study documenting hundreds of alleged incidents of restraint and seclusion in schools from 1990 to 2009, including 20 incidents causing death. Virtually all of the incidents identified by the GAO involved children with disabilities. The same year, in testimony before the House Education and Labor Committee, the GAO presented its study and reported on the risks of injury and death related to the use of restraint and seclusion on children. The GAO explained that that even if no physical injury is sustained, individuals can be severely traumatized during restraint.

8. Following the GAO report and testimony, U.S. Secretary of Education Arne Duncan wrote a letter to all states requesting that they review and revise their policies regarding restraint and seclusion. In response, the Kentucky Board of Education adopted regulations in 2012 limiting the use at school of physical restraint to situations where the "student's behavior poses an imminent danger of physical harm to self or others," and less restrictive behavioral intervention cannot stop such imminent danger of physical harm. 704 K.A.R. 7:160, § 3(1)(b), (3)(a), (d). The regulations further prohibit "school personnel," defined to include "school resource officers [and] sworn law enforcement officers … who are employed in a school or who perform services in the school on a contractual basis," 704 K.A.R. 7:160, § 1(13), from using

mechanical restraints such as handcuffs.  704 K.A.R. 7:160, § 3(2)(a).  The regulations went into effect in 2013.

9.     Plaintiffs S.R. and L.G. seek permanent injunctive relief to prohibit Defendants from authorizing or employing the unnecessary and excessive use of physical restraint and handcuffing on schoolchildren, including those with disabilities, and to compel Defendants to revise their policies, practices, and trainings accordingly.  Plaintiffs further seek an order declaring Defendants' conduct to be unconstitutional and to be in violation of the Americans with Disabilities Act.  Plaintiffs also seek compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1334(3), (4), to hear Plaintiffs' constitutional claims brought under 42 U.S.C. § 1983 and Plaintiffs' disability discrimination claims brought under Title II of the ADA, 42 U.S.C. § 12132 *et seq.*

11.     Pursuant to 28 U.S.C. § 1391(b), and the Local Rules of the Eastern District of Kentucky, Rules 3.1(a) and 3.2(a), venue is proper in this judicial district because the events giving rise to this action occurred in the City of Covington, Kenton County, Kentucky.

## PARTIES – PLAINTIFFS

12.     Plaintiff S.R. was eight years old and weighed 52 pounds when he was handcuffed in the Fall of 2014.  At all relevant times, Plaintiff S.R. has been and is enrolled in an elementary school within the Covington Independent Public Schools (CIPS) District.  Plaintiff S.R. has disabilities including post-traumatic stress disorder (PTSD) and attention deficit hyperactive disorder (ADHD).  He is a person with a disability protected by the Americans with

Disabilities Act.  As a minor child, Plaintiff S.R. brings this action through his mother and next

friend, T.R.  Plaintiff S.R. and his mother reside in Kenton County, Kentucky.

13.     Plaintiff L.G. was nine years old and weighed 56 pounds when she was

handcuffed twice in the Fall of 2014.  At all relevant times, Plaintiff L.G. has been and is

enrolled in an elementary school within the CIPS District.  Plaintiff L.G. has disabilities

including ADHD.  She is a person with a disability protected by the Americans with Disabilities

Act.  As a minor child, Plaintiff brings this action through her mother, L.J.  Plaintiff L.G. and her

mother reside in Kenton County, Kentucky.

### PARTIES – DEFENDANTS

14.     Defendant Kenton County Sheriff's Office (KCSO) is the law enforcement

agency for Kenton County, and a public entity for purposes of Title II of the ADA.

15.     Defendant Charles Korzenborn (Korzenborn) is the Sheriff for Kenton County,

and a "person" for purposes of 42 U.S.C. § 1983.  At all times relevant to this complaint,

Defendant Korzenborn was acting under color of state law.  Defendant Korzenborn is sued in his

official capacity.

16.     Defendant Kevin Sumner (Sumner) is employed by the Kenton County Sheriff's

Office as a School Resource Officer assigned to elementary schools with the CIPS District.

Defendant Sumner is a "person" for purposes of 42 U.S.C. § 1983, and an agent of Defendant

KCSO for purposes of the ADA.  At all times relevant to this complaint, Defendant Sumner was

acting under color of state law.  Defendant Sumner is sued in his individual and official

capacities.

## STATEMENT OF FACTS

17.     According to the U.S. Department of Education's Civil Rights Data Collection (CRDC), the CIPS District is 22.4 percent students with disabilities under the Individuals with Disabilities Education Act (IDEA).  Nationwide, the CRDC describes the IDEA population as 12 percent of the student population.

18.     As Sheriff for Kenton County, Defendant Korzenborn entered into an agreement with the CIPS District on or about August 2014 to provide four deputies to serve as School Resource Officers through June of 2015.  The School Resource Officers (SROs) are law enforcement officers employed by Defendant KCSO who are based in the schools.  Defendant Korzenborn has the authority to hire, dismiss, assign, or reassign the SROs.

19.     Defendants KCSO and Korzenborn have failed to create or maintain policies, practices, procedures, or trainings regarding the use of physical restraints, handcuffs, and other types of physical force on elementary schoolchildren, including students with disabilities such as Plaintiffs S.R. and L.G.

20.     Defendants KCSO and Korzenborn have failed to take reasonable steps to implement the regulations on restraint and seclusion adopted by the Kentucky Board of Education.

### *Facts Regarding Plaintiff S.R.*

21.     During the 2014-15 school year, Plaintiff S.R. was eight years old and enrolled in the third grade at the Latonia Elementary School in the CIPS District.  He stood about 3 ½ feet tall and weighed about 52 pounds.

22.     According to the CRDC, more than 20 percent of the students at Latonia Elementary – one in five students – is a student with an IDEA disability.

23.     In May of 2012, Plaintiff S.R. was diagnosed with ADHD, a mental disorder. Because of his ADHD, Plaintiff S.R. experiences difficulty staying focused, paying attention, controlling behavior, complying with directives, and remaining seated, and is substantially limited in one or more major life activities, including learning and neurological/brain functions.

24.     By October of 2013, school personnel with Latonia Elementary acknowledged that Plaintiff S.R. needed a behavior intervention plan to help him manage his disability-related behaviors.

25.     In August of 2014, Plaintiff S.R. was diagnosed with PTSD, a mental disorder. Because of his PTSD, Plaintiff S.R. experiences distress associated with traumatic experiences, and is substantially limited in one or more major life activities, including neurological/brain functions.

26.     On November 13, 2014, while in a classroom, Plaintiff S.R. experienced disability-related difficulties complying with directives from his teacher and the Vice Principal. He was removed from the classroom and directed to the Vice Principal's office.

27.     Portions of the events in the Vice Principal's office were video recorded by school personnel; there are three segments of video.  (*See* Exhibits A and B, which are two of the segments).

28.     While in the Vice Principal's office, Plaintiff S.R. tried to leave the room, but school personnel held the door closed.  Plaintiff S.R. was restrained by the Vice Principal and a special education teacher twice, for about four to five minutes each time.

29.     Plaintiff S.R. again tried to leave the room, and stated that he had to use the bathroom.  Plaintiff S.R. spoke with his mother, T.R., by phone, and calmed down.  T.R.

requested that her son be permitted to use the bathroom, and the school agreed.  Defendant

Sumner arrived, and took Plaintiff to the bathroom.

30. When Defendant Sumner and Plaintiff S.R. returned from the bathroom, Plaintiff

S.R. was not able to follow Defendant Sumner's directions, including a direction to sit down.  In

an "Investigation Report" written months later, Defendant Sumner stated that Plaintiff S.R.

"swung his arm and attempted to strike [him] with his elbow," but that he blocked Plaintiff's

elbow with his hand.

31. Defendant Sumner then handcuffed Plaintiff S.R. behind his back.  Defendant

Sumner placed the handcuffs at S.R.'s biceps, above his elbows.  School records indicate that

Plaintiff S.R. was handcuffed for about fifteen minutes.

32. On the video, Defendant Sumner can be heard stating, "You can do what we ask

you to or you can suffer the consequences."  Plaintiff S.R. can be heard saying, "Oh, God.  Ow,

that hurts."  (Exhibit A).

33. Defendant Sumner can be seen on the video pushing on the chain of the handcuffs

to place S.R. in a chair, stating, "Now sit down like I asked you to."  Plaintiff S.R. can be heard

stating, "please."  (Exhibit A).

34. More than seven minutes are captured on the third video segment.  Throughout,

Plaintiff S.R. can be seen crying, gasping, and squirming in the chair, and Defendant Sumner can

be seen and heard demanding compliance from Plaintiff S.R., stating:  "You know

you're…going to behave the way you're supposed to or you suffer the consequences.  It's your

decision to behave this way.  If you want the handcuffs off, you're going to have to behave and

ask me nicely. … Sit back down. … Ask nicely. … Look at me. … It's up to you if you want

them off or not."  (Exhibit B).

35.    While handcuffed, Plaintiff S.R. expressed pain and upset.  The video captures S.R. stating, "My arm!" and "Oww, oww."  Just before the end of the third video segment, a school official can be heard stating, "Stop the video."  (Exhibit B).

36.    Plaintiff S.R.'s mother arrived at school to take him home, and learned at that time that he had been handcuffed by Defendant Sumner.  As T.R. left with her son, Defendant Sumner told them that he would return to the school with his handcuffs if S.R. did not behave.

37.    The use of mechanical restraints such as handcuffs is prohibited by School Resource Officers like Defendant Sumner.  704 K.A.R. 7:160, §§ 1(13), 3(2)(a).  Further, at no point during the interaction between Plaintiff S.R. and Defendant Sumner on November 13, 2014 was there an imminent danger of physical harm or "direct threat" to S.R. or to anyone else that required Defendant Sumner to use handcuffs.  Nor was there a "direct threat" justification for the placement of the handcuffs, or for the prolonged period of time that the handcuffs were imposed. The only basis for the handcuffing was Defendant Sumner's desire for compliance.  *See* 704 K.A.R. 7:160, § 3(1)(b) ("Physical restraint shall not be used in a public school or educational program … [t]o force compliance[.]"); *see also id.* at § 1(4).

38.    Plaintiff S.R. experienced physical pain and significant emotional distress during the November 13, 2014 handcuffing.  Thereafter, as a result of the handcuffing, he suffered and continues to suffer emotional distress.

### *Facts Regarding Plaintiff L.G.*

39.    During the 2014-15 school year, Plaintiff L.G. was nine years old and enrolled in the fourth grade at the John G. Carlisle Elementary School in the CIPS District.  She weighed about 56 pounds.

40. In November of 2012, Plaintiff L.G. was diagnosed with ADHD, a mental disorder. Because of her ADHD, Plaintiff L.R. experiences hyperactivity, impulsivity, and difficulty paying attention, complying with directives, controlling emotions, and remaining seated. She has particular difficulty during transitions that occur at school. She also has experienced mental health crises that have required hospitalizations. She is substantially limited in one or more major life activities, including learning and neurological/brain functions.

41. Beginning in October of 2013, Plaintiff L.G. had a Section 504 education plan, which included strategies for assisting her with behavior. Plaintiff L.G. currently has an Individualized Education Plan (IEP) under the IDEA, which includes strategies for assisting her with behavior.

42. On August 21, 2014, Defendant Sumner was assigned to Plaintiff L.G's school, and was contacted by school personnel to assist with L.G., who had been put in the in-school suspension room. According to Defendant Sumner, Plaintiff L.G. was screaming and disrupting the classroom. Defendant Sumner placed Plaintiff L.G. in the back of his cruiser, a locked area of the car. Defendant Sumner took L.G. to her home, where they waited in the cruiser for more than one hour while they waited for L.G.'s mother to arrive.

43. On October 3, 2014, Plaintiff L.G. experienced disability-related difficulties complying with directives from her teacher. Plaintiff L.G. was first directed to the in-school suspension room, and then taken to the school isolation room. When Plaintiff L.G. tried to leave the isolation room, she was restrained by the Principal and Vice Principal.

44. School personnel contacted Defendant Sumner, who arrived while Plaintiff L.G. was still being restrained. When Defendant Sumner arrived, he handcuffed Plaintiff L.G. behind her back, placing the handcuffs around her biceps and above her elbows. In an "Investigation

Report" written months later, Defendant Sumner stated that he handcuffed L.R. because she "was attempting to injure the school staff" while being restrained.  Plaintiff L.G. remained handcuffed for twenty minutes.

45.    In reaction to being handcuffed, Plaintiff L.G. experienced a severe mental health crisis.  She cried and struggled physically against the handcuffs.  Defendant Sumner contacted a medical crisis team.  Plaintiff L.G. was taken by ambulance to the hospital for psychiatric assessment and treatment.

46.    The use of mechanical restraints such as handcuffs is prohibited by School Resource Officers like Defendant Sumner.  Further, at no point during the October 3, 2014, interaction between Plaintiff L.G. and Defendant Sumner was there an imminent danger of physical harm or "direct threat" to S.R. or to anyone else that justified Defendant Sumner's use of handcuffs.  Nor was there a "direct threat" justification for the placement of the handcuffs, or for the prolonged period of time that the handcuffs were imposed.

47.    Plaintiff L.G. experienced physical pain and significant emotional distress during the October 3, 2014 handcuffing.  As a result of the handcuffing, she suffered, and continues to suffer from, emotional distress.

48.    About three weeks later, October 23, 2014, Plaintiff L.G. was again handcuffed by Defendant Sumner.  On that day, in the morning prior to the start of the school day, L.G. was walking on the stairs and through the hallways when she was supposed to be in the cafeteria. The Principal encouraged L.G. to go to the cafeteria, and L.G. proceeded in that direction. Plaintiff L.G. stood outside the cafeteria under the watch of the Principal, who was waiting for L.G. to enter.

49.     While L.G. was standing outside the cafeteria, Defendant Sumner approached her and told her to go inside the cafeteria.  This encounter triggered L.G., who was still traumatized by her prior encounters with Defendant Sumner.  Plaintiff L.G. ran away and Defendant Sumner followed her, telling her to go inside the cafeteria.

50.     At about 7:45 a.m., Defendant Sumner and the Principal restrained L.G., while she resisted and struggled.  After about ten minutes, Defendant Sumner handcuffed Plaintiff L.G. behind her back, placing the handcuffs around her biceps and above her elbows.  In an "Investigation Report" written months later, Defendant Sumner stated that he restrained and then handcuffed L.R. because she was attempting to assault him.  Plaintiff L.G. remained kneeling on the floor, handcuffed and struggling, for about thirty minutes until her mother L.J. arrived.

51.     Plaintiff L.G.'s mother learned about her child's handcuffing when she arrived at the school and heard L.G. crying and screaming.  Plaintiff L.G.'s mother witnessed Defendant Sumner holding L.G.'s hands over her head while handcuffed in a shoulder hyperextension position.  This position is a pain compliance technique that is dangerous for children and is contrary to guidance on the safe restraint of children.

52.     After Plaintiff L.G.'s mother arrived, L.G. calmed down, and Defendant Sumner removed the handcuffs.

53.     The use of mechanical restraints such as handcuffs is prohibited by School Resource Officers like Defendant Sumner.  Further, at no point during the October 23, 2014, interaction between Plaintiff L.G. and Defendant Sumner was there an imminent danger of physical harm or "direct threat" to L.G. or to anyone else that justified Defendant Sumner's use of handcuffs.  Nor was there a "direct threat" justification for the placement of the handcuffs, or

for the prolonged period of time that the handcuffs were imposed.  Defendant Sumner used the handcuffs to seek compliance.

54.     Plaintiff L.G. experienced physical pain and significant emotional distress during the second handcuffing that occurred on October 23, 2014.  As a result of this second handcuffing, Plaintiff L.G's suffered, and continues to suffer from, emotional distress.

**CAUSES OF ACTION**

**Count I:  Unreasonable Seizure and Excessive Force
In Violation of the U.S. Constitution,
Fourth and Fourteenth Amendments
42 U.S.C. § 1983**
Against Defendant Korzenborn, in his Official Capacity,
Defendant Sumner, in his Official and Individual Capacities,
And Defendant Kenton County Sheriff's Office

55.     Plaintiffs S.R. and L.G. incorporate by reference the above paragraphs as though fully set forth herein.

56.     The U.S. Constitution protects Plaintiffs S.R. and L.G. against unreasonable seizures and excessive force.  "[T]he reasonableness of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Whether a seizure is unreasonable and unconstitutional depends upon the totality of the circumstances.

57.     The seizures of Plaintiffs S.R. and L.G. were unreasonable in light of the totality of the circumstances, including but not limited to:

        a.      The age, size, and disabilities of the children, including their limited ability to impose physical harms on others and their limited ability to form criminal intent;

        b.      That the children were experiencing behavior problems associated with their disabilities while at elementary school;

      c.      That the School Resource Officer placed handcuffs designed for adults on young schoolchildren, behind their arms and at their biceps, above the shoulders;

      d.      That the handcuffing violated the regulations of the Kentucky Board of Education;

      e.      The length of time of the handcuffing; and

      f.      The traumas imposed by the handcuffing.

58.      By engaging in the acts described herein, Defendant Sumner, acting under color of law and with deliberate indifference, violated the Plaintiffs' rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

59.      The rights of S.R. and L.G. to be free from unreasonable seizures and excessive force as described herein was clearly established in law at the time of the incidents alleged.

60.      Defendant Sumner acted maliciously, intentionally, and in reckless disregard to the rights of the plaintiffs.

61.      Further, Plaintiffs are informed and believe, and thereupon allege, that Defendant Korzenborn has failed and continues to fail to train and supervise Defendant Sumner regarding the restrictions under law on the use of physical restraints, including handcuffs, on elementary schoolchildren such as Plaintiffs, and that Defendant Korzenborn has failed and continues to fail to implement policies, practices, and procedures to prevent such unlawful physical restraints.

62.      Further, Plaintiffs are informed and believe, and thereupon allege, that Defendant Kenton County Sheriff's Office has maintained and continues to maintain, with deliberate indifference, an unlawful policy or custom of imposing unreasonable seizures and excessive force on schoolchildren, including the seizures and excessive force as described herein. Plaintiffs are further informed and believed that Defendant KCSO has failed to implement

training, supervision, policies, practices, and procedures to prevent such unlawful physical restraints.

63.     As a proximate result of the actions and inactions of Defendants, Plaintiffs S.R. and L.G. suffered and continue to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.  Plaintiffs continue to experience fear, distrust, and anxiety regarding law enforcement officers such as School Resource Officers.

64.     Plaintiffs are entitled to injunctive relief, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**Count II:  Disability-Based Discrimination
In Violation of Title II of the Americans with Disabilities Act
42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(3), (8)**
Against Defendant Kenton County Sheriff's Office

65.     Plaintiffs S.R. and L.G. incorporate by reference the above paragraphs as though fully set forth herein.

66.     The regulations implementing Title II of the ADA require that public entities avoid unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities.  28 C.F.R. § 35.130(b)(3), (8).

67.     Students with disabilities, and particularly students with disabilities involving behavior challenges, including Plaintiffs S.R. and L.G., are particularly susceptible to and injured by the unnecessary use of physical restraints, including handcuffs, on the basis of disability.  The effects on these students with disabilities include substantial and disproportionate physical and emotional injuries, and disruptive exclusions from the school community.

68.     Instead of the unnecessary use of physical restraints, including handcuffs, students with disabilities require reasonable modifications such as crisis intervention, de-escalation, patience, and waiting.

69.     Through its policy and practice of imposing unnecessary physical restraints, including handcuffs, on schoolchildren with disabilities, including Plaintiff S.R. and L.G., Defendant KSCO has violated and continues to violate the ADA.

70.     Through its failure to adopt a policy and practice of providing reasonable modifications to schoolchildren with disabilities, including Plaintiffs S.R. and L.G., such as crisis intervention, de-escalation, patience, and waiting, Defendant KSCO has violated and continues to violate the ADA.

71.     Plaintiffs are entitled to compensatory damages, injunctive relief, declaratory relief, and attorneys' fees and costs.

**Count III:  Disability-Based Discrimination and Failure to Accommodate
In Violation of Title II of the Americans with Disabilities Act
42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7)**
Against Defendant Kenton County Sheriff's Office

72.     Plaintiffs S.R. and L.G. incorporate by reference the above paragraphs as though fully set forth herein.

73.     Title II of the ADA requires that public entities do not subject individuals with disabilities to discrimination, and that such public entities provide reasonable modifications to persons with disabilities.  42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7).

74.     Under these provisions, law enforcement officers, including School Resource Officers like Defendant Sumner, may not discriminate on the basis of disability, and must provide reasonable modifications as needed during their interactions with individuals with disabilities.

75.     Based on all of the circumstances stated herein, Defendant Sumner knew or should have known that Plaintiffs S.R. and L.G. are persons with disabilities who require reasonable modifications under the ADA due to their disability-related difficulties.

76.     Instead of providing reasonable modifications such as crisis intervention, de-escalation, patience, and waiting, Defendant Sumner escalated his encounters with Plaintiffs S.R. and L.G., and subjected them to unnecessary physical restraint including handcuffing.  In so doing, Defendant Sumner acted with deliberate indifference.

77.     Further, and with deliberate indifference, Defendant KCSO failed to implement the nondiscrimination and reasonable modification requirements of the ADA through its policies, practices, procedures, and trainings, and instead authorized its School Resource Officers such as Defendant Sumner to engage in disability discrimination against Plaintiffs S.R. and L.G.

78.     As a proximate result of the actions and inactions of Defendant KCSO and its agents, Plaintiffs S.R. and L.G. suffered and continue to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.  Plaintiffs continue to experience fear, distrust, and anxiety regarding law enforcement officers such as School Resource Officers.

79.     Plaintiffs are entitled to injunctive relief, declaratory relief, compensatory damages, and reasonable attorneys' fees and costs.

## JURY DEMAND

80.     Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs S.R. and L.G., minor children, pray that this Court:

1.     Declare that that the actions and inactions described herein violate the rights of Plaintiffs S.R. and L.G. under the U.S. Constitution and the Americans with Disabilities Act;

2.      Issue an order enjoining the Defendants from engaging in the unlawful conduct complained of herein;

3.      Award Plaintiffs compensatory damages;

4.      Award Plaintiffs punitive damages;

5.      Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 12205; and

6.      Grant such other and further relief as the court deems just and proper.

Respectfully submitted,

/s/ R. Kenyon Meyer
R. Kenyon Meyer (KY Bar No. 85941)
Counsel for Plaintiffs
Dinsmore & Shohl LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky  40202
(502) 540-2300
Kenyon.meyer@dinsmore.com

/s/ Rickell L. Howard
Rickell L. Howard (OH Bar No. 0081982)*
Counsel for Plaintiffs
Children's Law Center, Inc.
1002 Russell Street
Covington, KY  41011
(859) 431-3313
rhoward@childrenslawky.org
*Motion to Appear *Pro Hac Vice* Pending

/s/ William Sharp
William E. Sharp (KY Bar No. 87896)
Counsel for Plaintiffs
Legal Director
ACLU OF KENTUCKY
315 Guthrie St., Ste. 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

Page 18

<u>/s/ Claudia Center</u>
Claudia Center (CA Bar No. 158255)*
Susan Mizner*
Counsel for Plaintiffs
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA  94111
(415) 343-0762
smizner@aclu.org
ccenter@aclu.org
*Motions to Appear *Pro Hac Vice* Pending