IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:15-cv-143 (WOB-JGW)

S.R., ET AL.                                          PLAINTIFFS

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

KENTON COUNTY SHERIFF'S OFFICE,
ET AL.                                                DEFENDANTS

        This matter is before the Court on defendants' joint
motion to dismiss (Doc. 29).  The Court previously heard oral
argument on this motion and took it under submission.  (Doc.
55).

        Having given this matter further study, the Court now
issues this Memorandum Opinion and Order.

### *Factual and Procedural Background*[1]

        Plaintiffs S.R. and L.G. are two elementary schoolchildren
with disabilities who were ages eight and nine respectively at
the time of the events at issue.  (Compl. ¶ 2).  Defendant Kevin
Sumner, an employee of the Kenton County Sheriff's Office, is a
School Resource Officer (SRO) assigned to plaintiffs' schools.
(*Id.*).  The Sheriff's Office is also a defendant herein.

---

[1] The facts are as alleged in the complaint.

### A. **The Handcuffing of S.R.**

In the Fall of 2014, S.R. was enrolled in the third grade at Latonia Elementary School.  He was approximately 3½ feet tall and weighed 52 pounds.  (Compl. ¶ 21).  S.R. suffers from post-traumatic stress disorder and attention deficit hyperactive disorder (ADHD).  (Compl. ¶ 12).  Due to these disorders, S.R. experiences a variety of behavioral problems.

On November 13, 2014, S.R. experienced disability-related difficulties complying with directives from his teacher and the Vice Principal, so he was removed from the classroom and taken to the Vice Principal's office.  (Compl. ¶ 26).[2]  While in the office, S.R. tried to leave the room, but school personnel held the door closed.  (Compl. ¶ 28).  S.R. was restrained by the Vice Principal and a special education teacher twice for about four to five minutes each time.  The teacher then telephoned S.R.'s mother, and S.R. spoke with her for several minutes. Having calmed down, S.R. stated that he needed to use the restroom, and his mother requested that he be allowed to do so. (Compl. ¶ 29).

---

[2] Portions of the events in the Vice Principal's office were captured on a video recording made by school personnel.  (Docs. 3, 27).

2

Defendant Sumner, who had just arrived at the school, took S.R. to the bathroom.  When they returned to the Vice Principal's office, S.R. did not follow Sumner's instruction to sit down.  Sumner would later state that S.R. "swung his arm and attempted to strike [him] with his elbow."  (Compl. ¶ 30).  Sumner then handcuffed S.R. behind his back, placing the cuffs on S.R.'s biceps above the elbows.  On the video, Sumner can be heard stating, "You can do what we ask you to or you can suffer the consequences.  S.R. can be heard saying, "Oh, God.  Ow, that hurts."  S.R. remained handcuffed for approximately fifteen minutes.  (Compl. ¶ 31).  When S.R.'s mother arrived, Sumner told her that S.R. would be handcuffed again if he did not behave.  (Compl. ¶ 36).

## A. **The Handcuffing of L.G.**

In the fall of 2014, L.G was enrolled in the fourth grade at John G. Carlisle Elementary School in Covington.  She weighed about 56 pounds.  (Compl. ¶ 39).  L.G. suffers from ADHD and mental health problems that cause her behavioral problems.  She has an Individualized Education Plan ("IEP") under the IDEA, which includes strategies for assisting with her behavior.

On August 21, 2104, Sumner, who was assigned to L.G.'s school, was contacted by school personnel to assist with L.G., who had been put in the school suspension room.  (Compl. ¶ 42).

3

According to Sumner, L.G. had been screaming and disrupting the classroom. He placed L.G. in the back of his cruiser and took her home, where they waited more than an hour for her mother to arrive. (*Id.*).

On October 3, 2014, L.D. experienced difficulties complying with her teacher's instructions, so she was placed in the suspension room and then in the school isolation room. When L.G. tried to leave the isolation room, she was restrained by the Principal and Vice Principal. (Compl. 43).

School personnel contacted Sumner, who went to the isolation room, where he handcuffed L.G. behind her back by placing the cuffs around her biceps and above her elbows. (Compl. ¶ 44). In a report prepared sometime later, Sumner stated that he handcuffed L.R. because she was attempting to "injure" the school staff while being restrained. L.G remained handcuffed for twenty minutes. (*Id.*) The handcuffing caused L.G. to have a mental health crisis and she was taken by ambulance from the school to the hospital. (Compl. ¶ 45).

About three weeks later, on October 23, 2014, Sumner again handcuffed L.G. That morning, L.G. was walking the hallways when she was supposed to be in the cafeteria. The Principal directed her to go to the cafeteria, and L.G. proceeded in that direction but did not enter. (Compl. ¶ 48). Sumner then

approached L.G. and told her to go into the cafeteria, but L.G. panicked and ran away. (Compl. ¶ 49).

At about 7:45 a.m., Sumner and the Principal restrained L.G., who resisted and struggled. (Compl. ¶ 50). Sumner then handcuffed L.G. behind her back in the same fashion as before. She remained handcuffed, kneeling on the floor, for about 30 minutes until her mother arrived. (*Id.*). In a report written months later, Sumner stated that he handcuffed L.G. because she was attempting to assault him.

When L.G.'s mother arrived, she saw L.G. crying and screaming and witnessed Sumner holding L.G.'s hands over her head in a shoulder "hyperextension" position. (Compl. ¶ 51).

### B. **This Lawsuit**

Plaintiffs filed this lawsuit on August 3, 2015, against Sumner, in both his official and individual capacities, and Charles Korzenborn, the Kenton County Sheriff, in his official capacity only.[3] (Doc. 1). The Complaint alleges the following causes of action: (1) Unreasonable Seizure and Excessive Force

---

[3] The Complaint also names Kenton County Sheriff's Office as a defendant. Plaintiffs acknowledged during a preliminary pretrial conference on August 18, 2015, that the Sheriff's office is not a legal entity capable of being sued under § 1983 and that the Sheriff in his official capacity is the proper defendant as to any claims for municipal liability. However, as will be discussed below, plaintiffs assert that the Sheriff's Office is a proper defendant as to the ADA claim.

in violation of the Fourth and Fourteenth Amendments (against all defendants); (2) Disability Discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (against Kenton County Sheriff's Office only); and (3) Failure to Accommodate under the ADA (against Kenton County Sheriff's Office only).   Plaintiffs seek damages and declaratory and injunctive relief.

### Analysis

This case has several unusual aspects.  First, the plaintiffs seek relief in their complaint on two theories which have differing standards for recovery: 42 U.S.C. § 1983 and the Americans with Disabilities Act.  *Id*.  Second, the defendants want to treat this as a law enforcement matter, arguing for qualified immunity on that basis, while plaintiffs focus on the fact that the handcuffing at issue was performed on young, disabled children at school, which they contend violates the ADA.

With these observations, the Court will analyze each cause of action.

A.   <u>Section 1983 Claim</u>

"To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of

6

the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

### 1.   Violation of Constitutional Right

Here, plaintiffs allege that they were subjected to unreasonable seizures and excessive force in violation of the Fourth Amendment. (Compl. ¶¶ 55-64). "Unlawful seizure and excessive force are distinct claims." *Hoskins v. Cumberland Cnty. Bd. Of Educ.*, No. 2:13-cv-15, 2014 WL 7238621, at *7 (M.D. Tenn. Dec. 17, 2014) (citing *Humphrey v. Mabry*, 482 F.3d 840, 848-51 (6th Cir. 2007)). Here, plaintiffs' Fourth Amendment claim appears to be based on the theory that the handcuffing was per se illegal under the circumstances, such that the claims effectively merge, rather than on a theory that otherwise lawful handcuffing was carried out in an excessive manner. Thus, the issue is whether the handcuffing constituted an unlawful seizure under the Fourth Amendment. *See, e.g., Gray v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006) (noting that where plaintiff, an elementary school student, alleged that SRO had no right to detain her at all under the circumstances, claim for excessive

force arising out of handcuffing "is not an independent claim, but rather is subsumed in her illegal seizure claim").[4]

Determining whether a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Because the test of reasonableness under the Fourth Amendment is not capable of precise definition, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*[5]

---

[4] While this appears to be the primary theory of the complaint, the Court notes that L.G. alleges not only that her handcuffing was per se unreasonable, but also that Sumner used a shoulder hyperextension pain compliance technique when he lifted her cuffed arms towards her head, thus using excessive force. (Compl. ¶ 51).

[5] In addition to this traditional Fourth Amendment analysis, some courts also analyze claims for unlawful seizures by school officials under the more lenient standard articulated by the Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). In *T.L.O.*, which involved searches of children in a school setting,

Applying these factors to the allegations of the Complaint, the Court concludes that plaintiffs have stated a plausible claim for unlawful seizure. While defendants argue that the plaintiffs were lawfully seized because they had committed the crime of assault, this characterization — while perhaps technically accurate — exaggerates the conduct at issue.

---

the Court recognized that public school students' rights under the Fourth Amendment are not as broad as those of the public and adopted a "reasonableness" test based on all the circumstances. *Id.* at 341-42. Courts have applied the relaxed *T.L.O.* standard to unlawful seizure claims in the school setting. *Hoskins v. Cumberland Cnty. Bd. Of Educ.*, No. 2:13-cv-15, 2014 WL 7238621, at *9 (M.D. Tenn. Dec. 17, 2014) (listing cases). *See also S.E. v. Grant Cnty. Bd. Of Educ.*, 544 F.3d 633, 640-41 (6th Cir. 2008) (applying *T.L.O.* line of authority to seizure of student by assistant principal).

Here, defendants have not cited to *T.L.O* nor urged its application in this case. Moreover, as the court in *Hoskins* noted, even if *T.L.O.*'s reasonableness standard would apply to the seizure of a student by school personnel, "wholly different concerns are raised when, as in this case, a *law enforcement officer* seizes a child at school." *Id.* at *10. Indeed, the *T.L.O.* Court expressly declined to reach the issue of what standard would apply to "the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies." *T.L.O.*, 469 U.S. at 341 n.7.

For these reasons, the Court will analyze plaintiff's claims under the traditional Fourth Amendment approach. The Court notes, however, that even under the *T.L.O.* test, courts have found that the handcuffing of students by law enforcement officers for non-safety-related reasons violates the Fourth Amendment. *See, e.g., Gray v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006) (handcuffing of nine-year-old student who had threatened to hit coach was unlawful seizure; incident was over, student posed no threat, and handcuffing by sheriff's deputy was attempt to punish student and change her behavior in the future).

Plaintiff S.R. — whose conduct was captured, in part, on video — was having, effectively, a severe temper tantrum. Admittedly, as seen on the video, he was pushing and swatting at the teacher who is preventing him from opening the door, but given his age and size, one could reasonably conclude that handcuffing was not necessary to address that conduct.

Moreover, according to the complaint, Sumner did not handcuff S.R. upon arriving at the school and learning of S.R.'s actions. Rather, he first escorted S.R. to the restroom, during which time S.R. apparently did not act out or engage in any unlawful conduct. Upon returning to the Vice Principal's office to wait for S.R.'s mother to arrive, S.R. refused to sit down as Sumner instructed. It was only at this point that Sumner placed S.R. in handcuffs. Sumner can then be heard telling S.R. that he must behave if he wants the handcuffs removed.

Thus, accepting the allegations of the complaint as true, Sumner handcuffed S.R. at a time when he presented no danger and could not leave the room, and the handcuffing was actually a disciplinary measure employed to force S.R. to change his behavior. *See Gray*, 458 F.3d at 1306 (handcuffing nine-year-old student was unlawful seizure; deputy's handcuffing of student

"was his attempt to punish Gray in order to change her behavior in the future").[6]

Under similar facts, another district court in the Sixth Circuit recently held that an officer's handcuffing of an eight-year-old student, who had threatened and swung his fist at his teacher, constituted an unlawful seizure as a matter of law. *Hoskins v. Cumberland Cnty. Bd. of Educ.*, No. 2:13-cv-15, 2014 WL 7238621 (M.D. Tenn. Dec. 17, 2014). The Court stated:

> Even in our society where the criminalization of children is lamentably becoming increasingly common, it remains relatively uncommon for law enforcement officers to arrest a child as young as T.H. at all, much less for this type of conduct. That is to say, not only was T.H.'s conduct not a "severe" crime, but also, given his extremely young age, arguably should not be treated as a crime at all. Although the Court has been unable to identify any limitation on the age of child that can be detained and arrested under Tennessee law, simple common sense dictates that it is not reasonable or appropriate to bring criminal charges against young children for relatively minor school misbehavior.

*Id.* at *8.[7]  *See also C.B. v. City of Sonora*, 769 F.3d 1005, 1040 (9th Cir. 2014) (applying *Graham* factors and holding

---

[6] As plaintiffs note, the Kentucky regulations governing the use of physical and mechanical restraints in schools prohibit the use of physical restraint as punishment or discipline or to force compliance or retaliate.  704 Ky. Admin. Regs. 7:160, sec. 3.  Further, physical restraints may be used only where the student's behavior "poses an imminent danger of physical harm to self or others." *Id.*

that handcuffing 11-year-old student who did not pose an immediate safety or flight risk was unreasonable). *But see J.H. v. Bernalillo Cnty.*, No. 14-2068, 2015 WL 7597462 (10th Cir. Nov. 27, 2015) (holding that arrest and handcuffing of of eleven-year-old special needs student who kicked teacher did not violate Fourth Amendment and was not excessive force).

Similarly, taking as true the allegations of the complaint as to plaintiff L.G., one could conclude that her handcuffing by Sumner was unreasonable because she had engaged in relatively minor misconduct, posed no direct threat to anyone, and was, in essence, simply defiant and noncompliant. The use of handcuffs on a small, nine-year-old child at school under the circumstances alleged as to L.G. thus also supports a claim for unlawful seizure.

Defendants rely heavily on *Neague v. Cynkar*, 258 F.3d 504 (6th Cir. 2001), for their argument that plaintiffs have failed to plead a constitutional violation. In *Neague*, the police responded to a 911 call by a school principal who had been assaulted by a seventh grader during

---

[7] Although the Court went on to hold that the police officer was entitled to qualified immunity, it is evident from the opinion that the Court was compelled to so hold because plaintiffs' counsel apparently failed to develop a record on the facts relevant to that issue. *Id.* at *13.

detention.  When the police arrived, the principal reported that he had been "chest-butted" by the student, and the student refused the officer's instructions to go to the office, instead stepping on her foot and walking away.  *Id.* at 506.  Another officer restrained the student and, after escorting him to the office, asked the principal if he wanted him to handcuff the student, to which the principal replied yes.  *Id.*  The student remained handcuffed for approximately half an hour until his parents arrived.

Finding that the officers were entitled to qualified immunity, the Sixth Circuit held that "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment."  *Id.* at 508.

*Neague* is arguably distinguishable.  First, it deals with a claim for excessive force, whereas plaintiffs here allege that their seizure itself was per se unlawful.  *See Hoskins*, 2014 WL 7238621, at *7 (noting that lawfulness of seizure was separate question from claim of excessive force, distinguishing *Neague*).  Second, plaintiffs assert here that there was no lawful arrest to which the handcuffing was incident.

13

As noted, defendants make much of the "crimes" in
which the plaintiffs had engaged, yet it is disputed
whether Sumner ever intended to arrest the children
because, as plaintiffs note, he took none of the steps
required by Kentucky law when a child is taken into
custody.  *See* KRS 610.200.

Further, this case is at the pleading stage.  As
discussed below with respect to the defense of qualified
immunity, discovery is necessary on a number of issues so
that the Court can have before it all relevant facts before
making any dispositive rulings.

Therefore, the Court will deny defendants' motion to
dismiss on the grounds that plaintiffs have failed to plead
a constitutional violation.

### 2.    Qualified Immunity

The doctrine of qualified immunity shields government
officials performing discretionary functions from civil
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights
of which a reasonable person would have known.  *Baynes*, 799 F.3d
at 609 (citing *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982)).

To determine whether a government official is entitled to
qualified immunity, the Court must make two inquiries:

> First, viewing the facts in the light most favorable
> to the plaintiff, has the plaintiff shown that a
> constitutional violation has occurred?  Second, was
> the right clearly established at the time of the
> violation?  These prongs need not be considered
> sequentially.

*Id.* at 610 (citations omitted).

The plaintiff bears the burden to show that the defendant is not entitled to qualified immunity.  *Id.* (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).

Defendants assert that, even if plaintiffs' constitutional rights were violated by the handcuffing, Sumner is still entitled to qualified immunity because a reasonable officer in his position would not have known that plaintiffs' rights to be free from handcuffing under these circumstances was clearly established.

For purposes of the qualified immunity analysis, a right is "clearly established" if the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right.  *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "The relevant inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

The purpose of the "clearly established" prong is to ensure that officials are on notice that their conduct was unconstitutional. *Id.* However, this is an objective, rather than a subjective, inquiry, such that the defendant's own subjective view of the legality of his actions is "essentially irrelevant." *Id.* at 610-11 (citing *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997)).

The Supreme Court has held that "the precise factual scenario need not have been found unconstitutional for it to be sufficiently clear to a reasonable officer that his actions violate a constitutional right." *Id.* at 611 (citing *Hope v. Peltzer*, 536 U.S. 730, 739, 741 (2002)). Thus, a government official "can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

Defendants argue that Sumner is entitled to qualified immunity because he was entitled to seize the children under Kentucky law based on their criminal conduct, as well as on the Sixth Circuit's holding in *Neague* that handcuffing incident to a lawful arrest does not constitute excessive force.

As already noted, *Neague* may be distinguishable from the facts alleged here, and it is highly questionable

16

whether a reasonable officer would arrest an eight or nine-year old for relatively minor misconduct at school.

In any event, because the defense of qualified immunity requires an analysis of all the surrounding facts in order to place the officer's conduct in context, the Court will deny the motion to dismiss without prejudice so that discovery can be done to examine the exact circumstances that led to the handcuffing of these children and whether, if a constitutional violation occurred, a reasonable officer in Sumner's position would have known that his actions were unlawful. *See, e.g., Crow v. Rhone*, No. 09-14497, 2010 WL 1523427, at *2 (E.D. Mich. April 15, 2010) (noting that court was unable to discern whether defendant was entitled to qualified immunity because motion to dismiss was filed shortly after case itself was filed, and no discovery had been taken; denying motion without prejudice).

As the Sixth Circuit has noted, it "is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Rather, the fact-intensive nature of the qualified-immunity analysis makes dismissal, if warranted, better suited to

17

the summary judgment phase, after discovery has been conducted. *Id.* at 433-34 (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

**B.   Americans With Disabilities Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

### a. The Kenton County Sheriff's Office is a Proper Defendant Under Title II of the ADA

Defendants first argue that the Kenton County Sheriff's Office is not an appropriate defendant under Title II of the ADA, relying on cases interpreting § 1983.  Defendants are mistaken.

The ADA defines a "public entity" broadly to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131.  The Sixth Circuit and other courts have thus held that sheriff's offices and other local police departments are "public entities" subject to suit under Title II.  *See Crumbaker v. McClean County, Ky.*, 37 F. App'x 784, 786 (6th Cir.

18

2002) (stating that McClean County Sheriff's Office is a "public entity" under Title II); *Catlett v. Jefferson County Corrections Dep't*, No. Civ.A. 3:00CV-340-S, 2000 WL 35547524, at *6 (W.D. Ky. Nov. 3, 2000) ("As an 'agency' of the Jefferson County Government, the Jefferson County Sheriff's Department is, therefore, a 'public entity' for the purpose of this motion [to dismiss ADA claim]."). *See also Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) ("A local police department falls 'squarely within the statutory definition of 'public entity.'"); *Waller v. City of Danville, Va.*, 515 F. Supp.2d 659, (D.W.V. 2007) (holding that police department was "public entity" under Title II of ADA), *aff'd*, 556 F.3d 171 (4th Cir. 2009).

Therefore, unlike the § 1983 context, a local police agency such as the Kenton County Sheriff's Office is subject to suit under Title II of the ADA. Nonetheless, as the Court noted during oral argument, it may be prudent for plaintiffs to add Kenton County itself as a defendant.

### b. Plaintiffs Have Adequately Pled a Title II Claim

Defendants next argue that plaintiffs have failed to plead plausible claims for discrimination under Title II.

To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified;

19

and (3) she was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)). Intentional discrimination on the basis of disability must be a "but for" factor in the challenged action. *Id.* n.1.

In addition, Title II prohibits public entities from utilizing criteria or methods of administration which "have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i). Further, public entities have an affirmative duty to make reasonable accommodations for disabled individuals:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

Taking the allegations of plaintiffs' complaint as true, plaintiffs have adequately pled a Title II claim. The complaint includes two ADA counts: a failure of reasonable accommodation and intentional discrimination. Plaintiffs allege that the Kenton County Sheriff's practice

of handcuffing disabled students is impermissible because it bypasses less severe measures such as crisis intervention, de-escalation, etc. to address their behavioral problems.

They also allege that defendant has failed to modify its practices with respect to disabled students, for example, by demanding unnecessary compliance without allowing for the nature of the children's disabilities which make such compliance difficult or impossible.

While defendants suggest that Sumner was not aware of plaintiffs' disabilities, plaintiffs have alleged sufficient facts regarding his knowledge such that resolution of this issue at the pleading stage would be inappropriate.

Therefore, the Court will deny the motion to dismiss the ADA claims herein.

### *Conclusion*

As discussed, this case is only at the pleading stage, and many issues need to be developed in discovery. A non-exhaustive list is:

1. What is the exact nature of the children's disabilities and what behavior can be expected to result therefrom?

2. In a school setting, what is the appropriate way to deal with children who are acting out because of disabilities?

3. What was the policy of the school district regarding use of SROs interacting with children with disabilities?

4. What training did Sumner receive in dealing with such children?

5. Was this training given by the Sheriff's Office or by the school district?

6. Did the officials of the school district or its governing body order or approve of the actions complained of?

Therefore, having reviewed this matter, and being sufficiently advised,

**IT IS ORDERED** that defendants' joint motion to dismiss (Doc. 29) be, and is hereby, **DENIED WITHOUT PREJUDICE** to renewing their arguments on summary judgment, after discovery has been completed.

This 28th day of December, 2015.



Signed By:

**_William O. Bertelsman_**

**United States District Judge**